# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

    Plaintiff,

v.                      **DETENTION ORDER**
                         Criminal File No. 19-168 (MJD/HB)

(2) RAYMOND EMMET PORTZ,

    Defendant.

LeeAnn K. Bell, Assistant United States Attorney, Counsel for Plaintiff.

Frederick J. Goetz, Goetz & Eckland PA, Counsel for Defendant.

## I. INTRODUCTION

This matter is before the Court on the Government's Motion for Revocation of Release Order. [Docket No. 270] The Court held a hearing on April 14, 2020. Defendant Raymond Emmet Portz consented to attend the hearing by video conference.

## II. BACKGROUND

### A. Charges

On June 20, 2019, Defendant Raymond Emmet Portz was indicted for Count 1: Conspiracy to Distribute Methamphetamine and Cocaine in violation of

21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. [Docket No. 20] The charge carries a mandatory minimum sentence of ten years and a maximum statutory penalty of life in prison. On June 20, 2019, a bench warrant was issued for Defendant's arrest. [Docket No. 23] The Indictment and bench warrant for Defendant's arrest were sealed until March 10, 2020. [Docket No. 267]

Nine other defendants were also charged in the Indictment, including Defendant's father, Roberto Lee, arrested on June 26, 2019, [Docket No. 57] and his mother, Rebecca Portz, arrested on June 27, 2019 [Docket No. 58]. On March 5, 2020, the United States Marshals Service arrested Defendant in California. ([Docket No. 269-1] at 2.)

B.   **Procedural History**

On March 6, 2020, an initial appearance and detention hearing was held for Defendant in the Central District of California. ([Docket No. 269-1] at 5.) The magistrate judge ordered Defendant released on a $25,000 bond and ordered him to travel to Minnesota to live with his sister. (Id. at 6-7.) The release order was stayed until the close of March 10, 2020, to permit the Government time to file a stay and a motion to review the order. (Id. at 6.) On March 10, this Court granted the Government's motion to stay and stayed the release order pending

2

the Court's ruling on the Government's motion to revoke the release order. [Docket No. 268]

Before the Court is the Government's Motion for Revocation of Release Order. [Docket No. 270] The Government requests that the Court revoke the magistrate judge's release order and order Defendant detained pending trial. Defendant requests that the Court place him under house arrest at the home of his close family friend, Gene Nelson, in Woodbury, Minnesota, and that he be subject to GPS monitoring.

The Court held a hearing on April 14, 2020. Defendant consented to appear by videoconference. During the hearing, Government Exhibits 1 through 6 were admitted into evidence. Defendant submitted 8 exhibits in pre-hearing filings.

## III. DISCUSSION

### A. Standard for Review of Release Order

Under 18 U.S.C. § 3145(a), "[i]f a person is ordered released by a magistrate judge, . . . the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release," and the Court shall decide the motion "promptly."

Under 18 U.S.C. § 3142(e), a defendant may be detained before trial "[o]nly if the government shows by clear and convincing evidence that no release condition or set of conditions will <u>reasonably assure</u> the safety of the community and by a preponderance of the evidence that no condition or set of conditions . . . will <u>reasonably assure</u> the defendant's appearance." <u>United States v. Abad</u>, 350 F.3d 793, 797 (8th Cir. 2003) (citations omitted).

> Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed . . . an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.) . . . .

18 U.S.C. § 3142(e)(3)(A).

Defendant was indicted for violation of 21 U.S.C. § 841(b)(1)(A), which provides that "such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life." If the Court finds probable cause that Defendant committed the offense for which he was indicted, the presumption in favor of detention applies. 18 U.S.C. § 3142(e)(3)(A).

> In determining if release conditions exist that will reasonably assure the appearance of a defendant at trial and the safety of the community, the court considers the following: (1) the nature and circumstances of the crime; (2) the weight of the evidence against the

4

defendant; (3) the history and characteristics of the defendant, including mental condition, family ties, employment, community ties, and past conduct; and (4) the seriousness of the danger to the community or to an individual.

Abad, 350 F.3d at 797 (citing 18 U.S.C. § 3142(g)).

In a presumption case, "a defendant bears a limited burden of production – not a burden of persuasion – to rebut that presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight." Id. If he meets his burden of production, the presumption in favor of detention is not eliminated, but remains one factor to be weighed by the Court. Id.

    B.    **Existence of Probable**

The Court finds that probable cause exists that Defendant committed Conspiracy to Distribute Methamphetamine and Cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. The Government has evidence from a GPS tracker on Defendant's car, hotel records, text messages between Defendant and his mother, a cannabis prescription or receipt in Defendant's name found in the suitcase with methamphetamine, and conversations from the wiretap on Defendant's father's phone, among other things, that ably establish probable cause that the charged offense was committed.

Therefore, a rebuttable presumption applies in favor of detention.

### C. No Condition or Combination of Conditions Will Reasonably Assure the Appearance of the Person as Required and the Safety of the Community

The Court finds that the Government has shown by a preponderance of the evidence that no condition or set of conditions will reasonably assure Defendant's appearance. The Court also finds that the Government has shown by clear and convincing evidence that no combination of conditions can reasonably assure the safety of the community.

#### 1. Nature and Circumstances of the Offense

The nature and circumstances of the charged offense are serious. Defendant is alleged to have traveled to California to pick up 50 pounds of methamphetamine. He then continued his drug trafficking after the 50 pounds of methamphetamine was seized. The charge carries a mandatory minimum sentence of ten years and a maximum statutory penalty of life in prison.

#### 2. Weight of the Evidence

The weight of the evidence against Defendant is strong, as noted with respect to the probable cause determination.

### 3. Defendant's History and Characteristics

Defendant's history and characteristics overwhelmingly support a finding that detention is required.

Defendant has ties to Minnesota; however, his family ties are also intertwined with his criminal activity. Defendant's mother has already pled guilty in this criminal case. Defendant's father was indicted along with Defendant and is currently detained pending trial. Defendant also has two young children who reside in Minnesota with their mother. However, the presence of his children in Minnesota has not prevented Defendant from moving frequently and residing in California during the last year. Defendant's text messages demonstrate that he had the ability to visit his children in Minnesota while still avoiding law enforcement detection. (See Govt. Ex. 5 at 3-5, 7 (stating that he "Figured out a low key way … finally got to be wit my babies for the holidays" and explaining how he took a 36-hour bus ride to Minnesota and "Plus I got new everything. Passport n all. . . . I'm not [sic] longer the guy you use to know").)

Defendant was on probation for a felony DWI conviction at the time he committed the charged offense. He had active warrants for his arrest on state charges during the time that he evaded arrest on the current federal charge.

Overall, Defendant has more than 20 warrants and 8 failures to appear resulting in revocations. He had 3 arrest warrants for failure to appear issued in July 2019, soon after his family members were arrested in this federal case.

While Defendant claims that he does not possess a passport, evidence submitted shows Defendant representing that he does have a passport under a false identity. (See Govt. Ex. 5 at 4-5 (texting that he was "low key" and not driving at all and had taken a bus to Minnesota, and "Plus I got new everything. Passport n all. . . . I'm not [sic] longer the guy you use to know").) Evidence shows that Defendant has been falsifying documents, such as pay stubs, to provide to courts since at least 2017. (See Govt. Ex. 6.)

During the past year, Defendant took extensive steps to evade law enforcement detection by frequently changing phones, frequently renting new apartments in the names of others, and obtaining documents in a different name. (See Govt. Exs. 1-5.)

The Court rejects Defendant's claim that he did not know that he was the target of a federal investigation and subject to a federal arrest warrant during the past year. Text messages by Defendant to Latoya Reese-Scott demonstrate that he knew that his parents had been arrested and that law enforcement had a

8

federal arrest warrant for him. On June 29, 2019, Defendant texted, "The FEDS grabbed my pops a lot of my Pops people and my mom and a couple of her friends" and, "I'm gonna need to be out of this apartment out here in LA." (Govt. Ex. 1 at 11.) Defendant then explained that he had previously paid rent with a cashier's check in his own name, "so I'm gonna move around from This spot ASAP." (Govt. Ex. 1 at 12.) He further explained, "My lawyer said don't panic yet," "But I'm still ready to shake this joint." (Id. at 13.) On September 24, 2019, Defendant mentioned that someone he knows was in jail in Minnesota for DWI. (Govt. Ex. 4 at 46, 48.) He explained, "I'm just worried the bitch got a big mouth … and she'll give me up to save her ass but I don't know if she even knows where I'm at anymore . . . " (Id. at 47.) He then explained that "my cousin Jeff went to jail over the weekend . . . the DEA went and asked him where I was." (Id. at 48.) See also United States v. Jeffrey Allen Phetteplace, Criminal File No. 20-6(1) (NEB). In answer to Reese-Scott asking if there is an "active warrant" for Defendant, he responded, "Hell YEAH" "Federal." (Govt. Ex. 4 at 48.) Defendant clearly knew that there was an active federal warrant for his arrest.

Given Defendant's history of failing to appear for court hearings and failure to abide by court orders, Defendant's recent extensive efforts to avoid an arrest in this case, his knowledge that he was sought by federal authorities, and the extent of Defendant's drug trafficking ties, the Court concludes that, if he is released, under any conditions, it is highly likely that he will flee to avoid prosecution.

### 4. Danger to the Community

Defendant poses a danger to the community because he was part of a large-scale drug trafficking organization and continued his drug trafficking activities even after he knew he was subject to a federal arrest warrant on the current charge. Evidence demonstrating that he continued to be involved in drug trafficking includes text messages from Defendant showing that he had access to $20,000 in cash within one week to give to Reese-Scott to get an apartment in a false name, despite having no evidence of any job. (See Govt. Ex. 4 at 58-73.) On September 21, 2019, Defendant sent a string of texts stating, "Jeff went to jail," "I just took a $15,000 loss," and "Fucking with him." (Govt. Ex. 4 at 15.) When asked "What did he go to jail for?", he replied: "Sale charge." (Id. at 15-16.) This was at the time that Defendant's cousin, Jeffrey Phetteplace, was

arrested for methamphetamine sales.  See United States v. Jeffrey Allen Phetteplace, Criminal File No. 20-6(1) (NEB).  The fact that Defendant took a $15,000 loss based on Phetteplace's arrest for methamphetamine sales indicates that Defendant was involved in drug trafficking with Phetteplace.  Additionally, despite Defendant's claim to be an independent day trader, on October 6, 2019, he refers to his circumstances going "mostly down hill lately" and stating that he would be "making changes to my team because they are the reason for this shitty ass ride."  (Govt. Ex. 4 at 101.)

The Court also notes that Defendant poses a danger based on his history of DWIs, including a felony DWI.

In sum, the Court concludes that no condition or combination of conditions will reasonably assure the appearance of Defendant.  The Court has considered Defendant's suggestion that he be subject to GPS monitoring and ordered to remain confined at the home of his close family friend and Defendant's argument that it is more difficult to flee given the current stay-at-home order in the State of Minnesota.  However, that combination of conditions is insufficient to reasonably assure Defendant's appearance because Defendant's family friend is not a guard.  GPS monitors can be cut off, and it takes time for

probation to respond to such an action. Defendant has demonstrated an ability to evade law enforcement using false identities and to travel under the radar. He has shown that he has access to large sums of cash in short order and has frequently used the services of those skilled in creating false identities. He has frequently failed to appear for court hearings. House arrest and a GPS bracelet are simply insufficient to reasonably assure that Defendant does not abscond.

The Court also finds that the Government has shown by clear and convincing evidence that no combination of conditions can reasonably assure the safety of the community. Defendant poses a threat based on his serious DWI record, his involvement in large-scale drug trafficking, and his continued drug trafficking even after he was aware of the seizure of drugs in this case. No combination of conditions is sufficient to reasonably assure that Defendant will not continue his drug trafficking activities.

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1. The Government's Motion for Revocation of Release Order [Docket No. 270] is **GRANTED**.

2. Defendant is committed to the custody of the United States Marshals for confinement in a correctional facility separate, to

the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

3. Defendant shall be afforded reasonable opportunity to consult privately with his lawyer.

4. Upon order of the Court or request by the United States Attorney, the person in charge of the correctional facility in which Defendant is confined shall deliver him to the United States Marshal for the purpose of appearance in connection with a Court proceeding.

Dated: April 14, 2020          s/ Michael J. Davis
                                                          Michael J. Davis
                                                          United States District Court